NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PROGRESSIVE SPINE & ORTHOPAEDICS,
LLC,

    *Plaintiff,*

  v.

EMPIRE BLUE CROSS BLUE SHIELD, ABC
INC.S 1-10, AND JOHN DOES 1-10,

    *Defendants.*

Civil Action No. 16-01649

**OPINION**

**John Michael Vazquez, U.S.D.J.**

### I.  INTRODUCTION

This matter comes before the Court on Defendant Empire Blue Cross Blue Shield's ("Empire" or "Defendant") motion to dismiss and Plaintiff Progressive Spine & Orthopaedics, LLC's ("Progressive Spine" or "Plaintiff") cross-motion to remand to state court. The Court reviewed all submissions made in support of, and in opposition to, the motions. For the reasons that follow, Defendant's motion is granted in part and denied in part. As to Plaintiff's motion, it will have the option of filing an amended complaint or, alternately, having the matter remanded to state court if it decides to forego its claims based on the Employee Retirement Income Security Act ("ERISA").

## II.   FACTS[1] AND PROCEDURAL HISTORY

Plaintiff is a healthcare provider located in Bergen County, New Jersey.   Complaint ("Compl.") ¶ 1 (D.E. 1-1).   Defendant is an insurance company that is "engaged in the business of providing or administering healthcare benefits, plans or policies." *Id.* ¶ 3.   The crux of this matter is Defendant's refusal to pay Plaintiff for medical services that Plaintiff provided to four patients who are members of Defendant's health benefit plans. *Id.* ¶ 7.   The parties do not dispute that the health benefit plans are ERISA-based plans.

Plaintiff performed "extensive spinal surgery operations and related procedures" on the following patients: A.G., D.F., C.P. and B.G (collectively the "Patients"). *Id.* ¶ 8.   Plaintiff does not have an agreement with Defendant setting rates for the provision of medical services. *Id.* ¶ 12. Instead, all of the Patients, except D.F., signed contracts "assign[ing] direct payment [by Defendant] of any . . . medical insurance benefits" to Plaintiff. *Id.* ¶ 9.   The operations performed on patients A.G., C.P., and B.G. were preauthorized by Defendant. *Id.* ¶ 10.   Patient D.F. was admitted to a Bergen County hospital on emergency basis and preauthorization for his procedure was not obtained by Plaintiff. *Id.* ¶¶ 10-11.

Plaintiff alleges that it submitted "reasonable medical bills" to Defendant for its services, but Defendant declined to pay Plaintiff for those services. *Id.* ¶¶ 13-14.   Plaintiff submitted numerous appeals, and Defendant eventually paid Plaintiff only "nominal amounts for the outstanding bills." *Id.* ¶ 15.   Plaintiff seeks to recover the unpaid amounts. *Id.* ¶ 16.

---

[1] The facts of this matter derive from Plaintiff's complaint and the "undisputedly authentic" documents attached as exhibits to Defendant's motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   Those documents include the health benefit plans of four patients with the initials A.G., C.P., B.G., and D.F.  D.E. 13.

On February 12, 2016, Plaintiff filed an eight-count complaint against Defendant alleging the following causes of action: (1) "Breach of Contract -- Claims Assigned from A.G., C.P., and B.G.," (2) "Breach of Contract -- Plaintiff's Original Claim for All Patients," (3) "Quantum Mer[u]it -- Plaintiff's Original Claim for All Patients," (4) "Estoppel -- Plaintiff's Original Claim for Patients A.G., C.P., B.G.," (5) "Unjust Enrichment -- Plaintiff's Original Claim for All Patients," (6) "Denial of Benefits Under ERISA -- Claims Assigned From Patients A.G., C.P., B.G.," (7) "Breach of Fiduciary Duties Under ERISA -- Claims Assigned from Patients A.G., C.P., B.G.," and (8) "Failure to Provide Documents Under ERISA -- Claims Assigned from Patients A.G., C.P., B.G." *Id.* ¶¶ 17-75.

On March 24, 2016, Defendant removed this matter to the District of New Jersey pursuant to federal question jurisdiction under ERISA, 29 U.S.C. § 1001 et seq. and 29 U.S.C. § 1132(a)(1)(B). D.E. 1.[2]  On April 28, 2016, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 8(a).[3] D.E. 5. Thereafter, Plaintiff filed an opposition and cross-motion to remand, to which Defendant replied. D.E. 11, 13.

Defendant argues that Plaintiff does not have standing to assert claims on behalf of D.F. because Plaintiff has not alleged that D.F. assigned any benefits to Plaintiff and Plaintiff is not an ERISA beneficiary of the health plans at issue. Def. Br. at 8. Defendant posits that absent an

---

[2] The time period has expired for Defendant to claim an alternative form of subject matter jurisdiction, even if it could have been properly asserted in the original notice of removal. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 206 n.11 (3d Cir. 2003) (citing 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3733 at 358-61 (3d ed. 1998)) (explaining that after 30-day period for removal, a defendant may not add completely new grounds to establish subject matter jurisdiction).

[3] Defendant's brief in support of its motion to dismiss (D.E. 5) will be referred to as "Def. Br." Plaintiff's brief in opposition and cross motion (D.E. 11) will be called "Pl. Br." Defendant's reply brief (D.E. 13) will be referred to as "Def. Rep."

alleged assignment, Counts Two, Three, and Five must be dismissed as they pertain to D.F. *Id.* at 8-9. Defendant contends that Plaintiff does not have standing to bring claims on behalf of B.G., A.G., and C.P. because Plaintiff has not adequately pleaded that there was a valid assignment from those patients. *Id.* at 9-10. Additionally, as to B.G. only, Defendant maintains that even if there was a purportedly valid assignment to Plaintiff, the assignment is nullified by virtue of the anti-assignment provision in B.G.'s health plan. *Id.* at 10-11.

Defendant further asserts that Plaintiff's breach of fiduciary duty claim (Count Seven) should be dismissed because it is duplicative of the relief sought in its denial of benefits claim (Count Six). *Id.* at 12. Also, Defendant argues that Plaintiff's state law claims for breach of contract, quantum meruit, estoppel, and unjust enrichment are completely and expressly preempted by ERISA and should be dismissed. *Id.* at 14. Finally, Defendant contends that Plaintiff fails to state a claim for Defendant's alleged failure to provide documents under Section 502(c) of ERISA because Plaintiff does not allege that it sent a written request for the Patients' health benefit plans. *Id.* at 15-16.

Plaintiff agrees with Defendant that its ERISA claims as applied to A.G., C.F., and D.F. were improperly pled and should be dismissed. Pl. Br. at 11. Plaintiff contends that if ERISA applies, it will voluntarily dismiss Count One. *Id.* at 16 n.3. As a result, Plaintiff argues, the Court is divested of subject matter jurisdiction over the remaining state law claims and this matter must be remanded to state court. *Id.* at 11-13. Plaintiff notes, however, that "[e]ven if this court did decide Empire's Rule 12(b)(6) argument, the result should be the same: dismissal without prejudice" with the opportunity to re-plead. *Id.* at 15. Additionally, Plaintiff contends that the state law claims are not preempted by ERISA because they independently arise from "contracts (or quasi-contracts) with Empire, based on Empire's representations that Progressive Spine was

authorized to perform the procedures in exchange for receiving reasonable payments." *Id.* at 16-19. Therefore, according to Plaintiff, those claims may properly be brought in state court.

As to B.G., Plaintiff voluntarily dismisses all counts with prejudice except for failure to provide documents under ERISA (Count Eight). *Id.* at 19. Plaintiff concedes, however, that Count Eight should be dismissed without prejudice with leave to amend. *Id.* Plaintiff maintains that the allegations concerning B.G. should be severed from those concerning the other patients in Count Eight, and the portion pertaining to B.G. should remain in federal court after any pleading deficiencies are cured. *Id.* at 19-21.

## III.   LAW AND ANALYSIS

### A.  Standard of Review

#### 1.  F.R.C.P. 12(b)(6)

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when it fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss under Rule 12(b)(6) the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.2002). In addition to the complaint, the Court may also consider any exhibits attached thereto. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that when deciding a motion to dismiss, courts generally consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  While not a "probability requirement," plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### 2.  F.R.C.P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction.  In addition, "[a] motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.2007).  "A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed."  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).

A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."  *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted).  For a factual attack, "the allegations of the complaint have no presumptive truthfulness and the court must weigh the evidence presented by the parties."  *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290-91 (3d Cir.

2006)).  Regardless of whether the attack is facial or factual, "the Plaintiff has the burden to prove

that the Court has jurisdiction." *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir.

2006)).

### 3.  Motion to Remand

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed

cases shall be remanded "[i]f at any time before final judgment it appears that the district court

lacks subject matter jurisdiction."  The party removing the action has the burden of establishing

federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d

Cir. 1987).  This burden is heavy, since removal statutes are "strictly construed and all doubts

should be resolved in favor of remand." *Id.*  In matters where diversity jurisdiction is not alleged,

removal requires that "a right or immunity created by the Constitution or laws of the United States

must be an element, and an essential one, of the plaintiff's cause of action." *Concepcion v. CFG

Health Sys. LLC*, No. 13-02081, 2013 WL 5952042, at *2 (D.N.J. Nov. 6, 2013) (internal quotation

marks omitted).

### B.  Application of ERISA

ERISA applies to "any employee benefit plan if it is established or maintained . . . by any

employer engaged in commerce."  29 U.S.C. § 1003(a).  "ERISA recognizes two types of

employee benefit plans: 'employee pension benefit plans,' and 'employee welfare benefit plans.'"

*Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992)

(citing 29 U.S.C. § 1002(3)).  This matter concerns welfare benefit plans, which are defined by

ERISA as follows:

> [A]ny plan, fund, or program which was heretofore or is hereafter
> established or maintained by an employer or by an employee
> organization, or by both, to the extent that such plan, fund, or
> program was established or is maintained for the purpose of

7

> providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (A) medical, surgical, or hospital care or benefits[.]

29 U.S.C. § 1002(1).

As noted, Plaintiff does not contest that the Patients' plans are subject to ERISA. The Court likewise concludes that the plans at issue here are welfare benefit plans under ERISA. *See* D.E. 13-2 to -4. They provide medical, surgical, and hospital care benefits to their participants. *Id.* Additionally, there is no question that the documents providing those benefits are "plans" under ERISA as they are formally established and maintained in writing. *See Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (noting that "[i]t is obvious that a system of providing benefits pursuant to a written instrument" satisfying ERISA's requirements "constitute[s] a 'plan, fund or program'").

Plaintiffs do, however, raise an issue as to the authenticity of the plans. Plaintiff contends that the benefit plans attached to Defendant's motion to dismiss do not necessarily govern this dispute because they are "unauthenticated, never before seen documents . . . without an affidavit or declaration of someone with personal knowledge." Pl. Br. at 11. Defendant, however, properly authenticated the benefit plans by filing the declaration of one of its legal specialists who certified that based on her personal knowledge, the plans submitted by Defendant belonged to the Patients. D.E. 13-1; *Pension Ben. Guar. Corp.*, 998 F.2d at 1196 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Accordingly, the employer-benefit plans at issue are the Patients' benefit plans and controlled by ERISA.

### C. Plaintiff's Standing

8

Under ERISA's civil enforcement provision, Section 502(a), standing to file suit is limited to participants and beneficiaries of a plan. 29 U.S.C. § 1132(a). The Third Circuit, however, has held that "health care providers may obtain standing to sue by assignment from a plan participant." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). This type of standing is known as "derivative standing." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). "The party seeking recovery under ERISA § 502(a) has the burden of establishing standing." *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 15-4525, 2015 WL 6082299, at *3 (D.N.J. Oct. 15, 2015).

When proving standing, a plaintiff must plausibly plead underlying facts demonstrating a valid assignment of benefits. *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *6 (D.N.J. July 15, 2015). To do so, a plaintiff may include in its complaint the particular language of the assignment or "include the assignment of benefit document itself." *Cohen*, 2015 WL 6082299, at *3. But a conclusory statement merely alleging that a provider was assigned plan benefits from its patients does not plausibly demonstrate standing. *Id.* (finding no valid assignment of benefits when the "[c]ourt [was] left with nothing more than conclusory recitations of the legal standard, which is insufficient under *Iqbal* and *Twombly*").

Here, Plaintiff brings Counts One, Six, Seven, and Eight as an assignee of the rights of patients A.G., C.P., and B.G under their benefit plans. In its complaint, Plaintiff alleges that those patients "all signed contracts 'assign[ing] direct payment of any . . . medical insurance benefits' to [P]laintiff." Compl. ¶ 9. This conclusory language falls short of the plausible pleading requirement. Plaintiff did not set forth the actual language from the assignments in its complaint nor did it include a copy of the alleged assignments. Similarly, Plaintiff failed to paraphrase the

9

important language from the assignments. As a result, Plaintiff has not adequately pled derivative standing. Counts One, Six, Seven, and Eight are dismissed without prejudice.

The Court also finds that Count Eight (failure to provide documents under ERISA) should be dismissed because it was insufficiently pled. To state a cause of action under Section 502(c)(1)(B), a plaintiff must plead: "(1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request." *In re Wargotz v. NetJets, Inc.*, No. 09-4789, 2010 WL 1931247, at *3 (D.N.J. May 13, 2010). Although Plaintiff alleges that it "requested plan materials on behalf of Patients A.G., C.P., [and] B.G.," Plaintiff does not allege that it sent a *written* request. Compl. ¶¶ 73-75. For that reason, Count Eight is insufficiently pled and dismissed without prejudice. *See Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *6 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016) (granting motion to dismiss for claim under Section 502(c)(1)(B) when plaintiff failed to allege that it sent written request for information).

### D. Plaintiff's Motion to Remand: Complete Preemption under ERISA Section 502(a)

Plaintiff argues that if Counts One, Six, Seven, and Eight are dismissed, then remand is proper because the only remaining counts are state law claims, and thus, the Court is divested of its subject matter jurisdiction. Pl. Br. at 11, 16 n.4. Defendant counters that remand is inappropriate because ERISA completely preempts Plaintiff's state law claims, which provides a basis for the Court's jurisdiction. Def. Br. at 13-15. The Court finds that ERISA does not completely preempt Counts Two through Five.

Under the removal statute, 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. If a complaint alleges a federal question, then the matter may be removed to district court. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

In determining whether a complaint alleges a federal question, courts are generally guided by the well-pleaded complaint rule. The rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Generally speaking, a plaintiff is "entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004). However, an exception to the well-pleaded complaint rule is found through complete preemption. Complete preemption applies "if Congress has so completely preempted a particular area," so that any complaint raising a claim in that area is "necessarily federal in character" and may be removed to federal court. *LaMonica v. Guardian Life Ins. Co. of Am.*, No. 96-6020, 1997 WL 80991, at *3 (D.N.J. Feb. 20, 1997). Put differently, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

Before addressing whether Plaintiff's state law claims are completely preempted, the Court notes that under ERISA, the term "'preemption' is used in the law in more than one sense." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). The two forms of preemption found in ERISA are "complete preemption" under Section 502(a) and "ordinary preemption" under Section

11

514(a).  *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997).  The significant difference between complete preemption and ordinary (or conflict) preemption is that "[u]nlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint."  *In re U.S. Healthcare*, 193 F.3d at 160.  In other words, if ERISA completely preempts a state law cause of action, then a defendant may remove the matter to federal court on that basis alone, "even if the well-pleaded complaint rule is not satisfied."  *Joyce*, 126 F.3d at 171.  "But if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) because the plaintiff's claims 'relate to' an ERISA plan, the district court is without subject matter jurisdiction."  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009); *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (holding that "only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required").  In short, complete preemption pursuant to Section 502(a) is a matter of federal subject matter jurisdiction while conflict preemption under Section 514 is not.

There is a two-part test to determine whether a state law claim is completely preempted under Section 502(a).  A federal court has jurisdiction over a state law claim when (1) the plaintiff could have brought the action under Section 502(a) of ERISA[4] and (2) no independent legal duty supports the plaintiff's claim.  *Pascack Valley Hosp. v. Local 464A UFCW Welfare*

---

[4] A claim may be brought under Section 502(a) of ERISA by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. 1132(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987).

*Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (holding that state law claim is completely preempted when action could have been brought under Section 502(a)(1)(B) and no other legal duty independent of ERISA exists). The test is fashioned in the conjunctive so that "a state-law cause of action is completely preempted only if *both* of its prongs are satisfied." *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (emphasis added).

The Third Circuit elaborated on the meaning of these two prongs in *Pascack Valley*. In that case, the plaintiff hospital entered into a "Network Hospital Agreement" with an independent consultant. 388 F.3d at 396. The consultant also had a "Subscriber Agreement" with the defendant benefit plan, which required the defendant to make timely (and discounted) payments to participating hospitals or pay the hospital's customary rate. *Id.* The defendant was an ERISA "employee welfare benefit plan," which the Third Circuit referred to as the "Plan." *Id.* at 395. The patients who the plaintiff treated were beneficiaries of the welfare benefit plan. The defendant failed to make timely payments, so the plaintiff sued for its customary rate. *Id.* at 396. The plaintiff hospital asserted breach of contract claims against the defendant, alleging that the defendant violated the "Subscriber Agreement" to which the plaintiff was a third-party beneficiary. *Id.* at 397. The plaintiff did not bring a cause of action pursuant to the patient's welfare benefit plan.

The Third Circuit held that the hospital's state law claims were not completely preempted by ERISA for two reasons. First, the court found that the hospital "could not have brought its claims under § 502(a) because the Hospital does not have standing to sue under that statute." *Id.* at 400. The hospital was neither a participant or beneficiary under the Plan and there was no proof that the hospital received a valid assignment of rights. *Id.* at 401-02. Due to the absence of an

13

assignment of benefits, the Third Circuit concluded that the hospital did not have standing to sue the defendant under Section 502(a), and accordingly, the first prong was not satisfied. *Id.* at 402.

Next, the court held that the second prong was not satisfied because "the Hospital's state law claims are predicated on a legal duty that is independent of ERISA." *Id.* The court explained that there were three critical facts to support its decision:

> (1) the Hospital's claims in this case arise from the terms of a contract -- the Subscriber Agreement -- that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) the dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Hospital, but the amount, or level, of payment, which depends on the terms of the Subscriber Agreement.

*Id.* at 403-04 (internal quotation marks omitted).  Therefore, the court concluded that the hospital's state law claims were not completely preempted under Section 502. *Id.* at 404.

The court in *Pascack Valley* recognized that the plaintiffs "claims, to be sure, are derived from [the patient's] ERISA plan, and exist 'only because' of that plan." *Id.* at 402 (quoting *Davila*, 542 U.S. at 210).  Yet, the Third Circuit also recognized that neither coverage nor eligibility were in dispute. *Id.*  As a result, the court in *Pascack Valley* reasoned, the plaintiff's "right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." *Id.* (citation omitted).

In reaching its conclusion, the Third Circuit relied on the Ninth Circuit's decision in *Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045 (9th Cir. 1999). *Pascack Valley*, 388 F.3d at 402-03.  In *Anesthesia Care*, four medical providers (the "Providers") entered into a provider agreement with Blue Cross of California ("Blue Cross") where Blue Cross's subscribers were directed to the Providers in exchange for the Providers agreeing to accept payment according to a specified fee schedule. *Anesthesia Care*, 187 F.3d at 1048.  Blue Cross

14

attempted to change the fee schedule, and the Providers filed suit alleging a breach of the provider agreements. *Id.* at 1049.

In rejecting the argument that the Providers' claims were completely preempted under Section 502(a), the Ninth Circuit held that "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans." *Id.* at 1050. The court in *Anesthesia Care* observed that the dispute centered on the "alleged breach of the provider agreements' provisions regarding fee schedules, and the procedure for setting them, not what charges are 'covered' under the [benefit plan]." *Id* at 1051. To that end, the Ninth Circuit explained that the issue was not "the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount,* or level, of payment, which depends on the terms of the provider agreements." *Id.* Therefore, the *Anesthesia Care* court concluded that because the Providers' suit did not depend upon interpretation of the terms of the plan, the Provider's claims were not completely preempted under Section 502(a). *Id.* at 1051-52.

In another case from the Ninth Circuit, *Marin General*, 581 F.3d 941, the court again addressed whether certain state law claims were completely preempted under Section 502(a). There, the plaintiff hospital alleged that the defendant plan administrator verbally preauthorized a patient's treatment and agreed to pay 90% of the total charges. *Id.* at 943. The patients' health benefits were provided pursuant to an ERISA-governed plan. *Id.* After the procedure, the plan administrator only paid about 25% of the billed amount. *Id.* The lesser amount was paid pursuant to the patients' assignment to the plaintiff hospital. *Id.* at 947. The hospital then brought suit to recover the outstanding balance alleging breach of implied contract, breach of an oral contract, negligent misrepresentation, quantum meruit, and estoppel. *Id.* at 944. After the defendant

15

removed the matter to federal court, the hospital moved to remand, arguing that its state law claims were not completely preempted so that there was no basis for federal subject matter jurisdiction. *Id.*

Relying on *Anesthesia Care*, the Ninth Circuit first determined that the hospital was not asserting a claim under Section 502(a). The *Marin General* court explained that the state law claims were seeking relief not as an assignee of an ERISA plan's benefits, but based on the defendant plan administrator's alleged oral agreement to pay 90% of the total charges. *Id.* at 948. The court rejected the plan administrator's argument that "because the Hospital could have brought a suit under § 502(a)(1)(B) for payments owed to the patient by virtue of the terms of the ERISA plan, this is the only suit the Hospital could bring." *Id.* at 949. The court in *Marin General* explained that, like in *Anesthesia Care*, "even though the [hospital] had received an assignment of the patient's medical rights and hence could have brought a suit under ERISA, there was 'no basis to conclude that the mere fact of assignment converts the [hospitals'] claims into claims to recover benefits under the terms of an ERISA plan.'" *Id.* (quoting *Anesthesia Care*, 187 F.3d at 1052). Therefore, the *Marin General* court found that the first prong of the complete preemption test was not met.

As to the second prong of the complete preemption test, the Ninth Circuit held that the hospital's state law causes of action were based on independent legal duties. The court in *Marin General* explained that all the state law claims arose out of the allegation that the plan administrator entered into an independent verbal contract or quasi-contract prior to the patient's medical procedure taking place. *Id.* at 949-50. According to the court, "[s]ince the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they

16

would exist whether or not an ERISA plan existed, they are based on other independent legal duties" and are not completely preempted. *Id.* at 950 (internal quotation marks omitted).

In this case, the issue presented is very similar to the one addressed by the Ninth Circuit in *Marin General*: whether Plaintiff's state law claims are completely preempted under Section 502(a) of ERISA when Defendant allegedly preauthorized the Patients' medical procedures and made an oral promise to pay Plaintiffs' "usual, customary, and reasonable amount."[5]  Compl. ¶ 26. The common theme in *Marin General*, *Anesthesia Care*, and *Pascack Valley* is that the plaintiffs' claims are not completely preempted when plan administrators enter into separate agreements (whether through a subscriber agreement or a verbal commitment) prior to the procedures being performed.  The plaintiffs, in turn, relied upon these agreements to their detriment.  In each decision, the court found that the Section 502(a) complete preemption test was not satisfied because the plaintiffs' state law claims were based on those agreements, separate and apart from the ERISA plans at issue.

Here, Plaintiff brings Counts Two through Five based on Defendant's alleged verbal promise or agreement to pay the usual, customary, and reasonable rate of the procedures. Moreover, Defendant allegedly made this promise before Plaintiff performed the surgeries at issue.

---

[5] The Court does not address whether Counts Two through Five plausibly and adequately state a cause of action. *See Iqbal*, 556 U.S. 662. Although Defendant raised the plausibility issue at oral argument, Defendant did not argue this point in its moving papers.  Defendant's brief and reply argues only that Plaintiff's state law claims are preempted and that they may not be brought in the absence of a valid assignment. As to D.F., the facts alleged differ from the other Patients in that there is no allegation of a verbal promise preauthorizing D.F.'s surgery.  Instead, Plaintiff bases its claims on its "expectation" that it would be paid the "usual, customary, and reasonable" rate when it provided emergency services to D.F. Compl. at ¶ 26. The Court could find no case law supporting Plaintiff's legal theories under those facts; however, as noted, the Court does not make a decision on this issue because Defendant did not move to dismiss on those grounds.

Turning to the first prong of the complete preemption test -- whether Plaintiff's claim could have been brought pursuant to Section 502(a) -- a critical distinction between the Third Circuit's decision in *Pascack Valley* and the Ninth Circuit's in *Marin Hospital*, was whether the plaintiff had received an assignment.  In *Pascack Valley*, the Third Circuit found that, as to the first prong, the lack of an assignment of benefits was the dispositive factor to conclude that the hospital could not have brought its claim pursuant to Section 502(a).  388 F.3d at 404.  By comparison, the hospital in *Marin General* had received an assignment (and, indeed, payment pursuant to the assignment), but the Ninth Circuit nevertheless found that the first prong favored the hospital.  In *Marin General*, the Ninth Circuit explained that simply because the medical provider was assigned the patient's benefits and *could* have brought a claim under Section 502(a), it did not mean that a claim under Section 502(a) was the *only* cause of action the medical provider could bring.  581 F.3d at 949; *see also Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347 (11th Cir. 2009) (explaining that "a provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment holds two separate claims . . . the provider may assert a claim for benefits under ERISA, the state law claim, or both.").  The court in *Marin General* concluded that state law claims based on an alleged oral contract between the medical provider and plan administrator preauthorizing the patient's medical procedure were not subject to Section 502(a), and therefore, were not completely preempted.  *Marin Gen.*, 581 F.3d at 949.

The Court finds the Ninth Circuit's reasoning as to the impact of an assignment persuasive.  However, the Court is bound by the Third Circuit's decision in *Pascack Valley*.  As noted, the *Pascack Valley* court found the lack of an assignment to be the determinative factor as to the first

prong of the complete preemption test. The Court was unable to find any decision by the Third Circuit which modified its findings as to the import of an assignment, or lack thereof.[6]

Here, for the reasons discussed above in Section III.C, there is insufficient proof demonstrating a valid assignment to Plaintiffs. In the absence of a valid assignment, Plaintiff is not able to bring a claim under Section 502(a). However, Plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Pascack Valley*, 388 F.3d at 404 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 22 (1983)). In other words, the fact that plaintiff inadequately pled an assignment of benefits cannot be a basis to negate subject matter jurisdiction if there actually was a valid assignment. Plaintiff clearly claims that it received valid assignments even though Plaintiff failed to plausibly plead facts concerning the assignments. In fact, Plaintiff brings ERISA claims pursuant to the assignments. As a result, in light of *Pascack Valley*, the Court finds that the first prong of the complete preemption test is met because Plaintiff's claim could be brought pursuant to Section 502(a). Yet, because the test for complete preemption is composed of two parts, and the test is in the conjunctive, Counts Two through Five may not be completely preempted if they are subject to an independent legal duty.

---

[6] The Third Circuit employs a different analysis under the first preemption prong when a plan participant brings a case, as opposed to a third party asserting claims pursuant to an independent contract or agreement. *See Levine v. United Healthcare Corp.*, 402 F.3d 156, 162 (3d Cir. 2005) (noting that claims challenging "the administration of, or eligibility for, benefits . . . fall within the scope of 502(a) and are preempted," but claims challenging "the quality of the medical treatment performed" fall outside of 502(a) and are not preempted); *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 447 (3d Cir. 2003) (explaining that complete preemption hinges on whether the claim concerns "eligibility decisions" or "treatment decisions," with the former satisfying the first prong of the complete preemption test); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 272 (3d Cir. 2001) (same). When a plan participant brings a case, the question of whether there was a valid assignment is not a relevant inquiry.

The second prong asks whether Plaintiff's state law claims "are predicated on a legal duty that is independent of ERISA." *Pascack Valley*, 388 F.3d at 393. Under this prong, a court "must examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an 'essential part' of Plaintiff's claims." *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10-4260, 2011 WL 4737067, at *6 (D.N.J. June 30, 2011). Thus, this prong often turns on whether a plaintiff's claims are "inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits." *Id.* at *7.

In *Pascack Valley*, the Third Circuit identified three key facts to support its conclusion that the plaintiff hospital's claims were predicated on an independent legal duty and not completely preempted under Section 502(a). 388 F.3d at 403-04. Those facts were that (1) the hospital's claims arose from a written subscriber agreement independent of the ERISA plan, (2) the participants and beneficiaries of the plan were not parties to the subscriber agreement, and (3) the dispute centered on the amount of payment as opposed to the right to payment, which depended on the terms of the subscriber agreement independent of the ERISA plan at issue. *Id.* All three of those factors support Plaintiff here.

First, Plaintiff alleges that Defendant formed an oral contract, or quasi-contract, with Plaintiff by preauthorizing the surgeries and agreeing to pay the usual, customary, and reasonable rate for the Patients' medical procedures. Second, the Patients were not parties to that alleged agreement and could not bring suit themselves for a breach of that verbal agreement. Finally, the amount of Plaintiff's recovery is determined by looking to the terms of the alleged verbal agreement as opposed to the terms of the Patients' ERISA plans. Therefore, for the same reasons discussed in *Pascack Valley*, the second complete preemption prong has not been met and Counts Two through Five are not a basis for subject matter jurisdiction. The amounts due to Plaintiff, if

20

any, are not determined by the Patient's ERISA plans.   Instead, the amounts are based on Defendant's verbal commitment to Plaintiff prior to Plaintiff's performing the surgeries.

The Court recognizes that in *Pascack Valley* there was a written subscriber agreement giving rise to the independent legal duty, whereas here, the alleged contract was the product of an oral agreement.   Undoubtedly, a written contract provides clearer proof than a verbal agreement. The Court, however, need not consider the degree of proof at this stage in the proceedings.   As a general matter, unless some specific exception such as the statute of frauds applies, an oral contract binds the parties in the same manner as a written contract.   *Baer v. Chase*, 392 F.3d 609, 620 (3d Cir. 2004) ("A contract may be expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others."); *Marilyn Manson, Inc. v. N.J. Sports & Exposition Auth.*, 971 F. Supp. 875, 888 (D.N.J. 1997) ("A contract need not be expressed in writing as long as the parties agreed to do something that they previously did not have an obligation to do.").   Accordingly, the Court sees no legal distinction between the written contract in *Pascack Valley* and the oral contract alleged in this matter.   As noted, in *Marin General*, the contract creating the independent legal duty was formed pursuant to a telephone call.   In finding that there was no complete preemption, *Marin General* relied on *Anesthesia Care*, an opinion that the Third Circuit found persuasive in *Pascack Valley*.   Here, the Court finds the reasoning of *Marin General* persuasive and holds that the alleged oral contract, or quasi-contract, between Plaintiff and Defendant creates an independent legal duty removing Plaintiff's state law claims from the scope of ERISA's Section 502(a)'s complete preemption.[7]

---

[7] The Court notes that a decision in this District held that state law breach of contract claims were completely preempted by ERISA despite the insurer's alleged preauthorization of the medical procedure at issue.   *See Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, No. 14-6175, 2015 WL 5770474, at *3 (D.N.J. Sept. 30, 2015).   The court in *Elite Orthopedic*, however, did not provide an in-depth analysis to support its conclusion and relied upon *Metro. Life Ins. Co. v.*

At oral argument, Defendant directed the Court to two cases from the Ninth Circuit, which Defendant claimed distinguished *Marin General*. *See Filler v. Blue Cross of California*, 593 F. App'x 685 (9th Cir. 2015); *Melamed v. Blue Cross of California*, 557 F. App'x 659 (9th Cir. 2014). In *Filler*, *Marin General* is not cited to or discussed by the court. Additionally, the facts do not indicate that the defendant insurer made an independent promise to pay for medical services rendered to its insureds by the plaintiff. In *Melamed*, the court cited to *Marin General*, but the underlying facts did not concern an alleged independent contract between the medical provider and the plan administrator. Instead, the plaintiff physician alleged that he was a third-party beneficiary of the written ERISA contracts between the defendant insurer and its insureds, the physician's patients. *Melamed*, 557 F. App'x at 661. *Filler* and *Melamed* are therefore inapposite. Accordingly, there is no federal question subject matter jurisdiction over Counts Two through Five of the complaint as to Patients A.G., C.P., and B.G.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. Counts One, Six, Seven, and Eight are dismissed without prejudice. The remaining causes

---

*Taylor*, 481 U.S. 58, 66 (1987) -- a case where there was no independent promise of preauthorized coverage. In another case from this District, the court found that there was no complete preemption when the plaintiff medical provider alleged that the defendant insurer preauthorized the provider "to perform surgery on various of [the] [d]efendant's insureds" and the provider asserted state law claims "premised on distinct agreements with [the] [d]efendant independent of underlying ERISA plans." *Garrick Cox MD LLC v. Cigna Healthcare*, No. 16-4611, 2016 WL 6877778, at *1, *4 (D.N.J. Oct. 28, 2016), *report and recommendation adopted*, No. 16-4611, 2016 WL 6877740 (D.N.J. Nov. 21, 2016). In *Cox*, the court found that the defendant's alleged preauthorization of the surgeries sufficiently created an independent legal duty, thus removing the plaintiff's state law claims from the scope of Section 502(a) complete preemption. *Id.* at *4. The reasoning in *Cox* is consistent with the Court's analysis here.

of action, Counts Two through Five, as to Patients A.G., C.P., and B.G.[8] are not completely preempted by Section 502(a) of ERISA.  Finally, Counts Two, Three, and Five are dismissed without prejudice as to Patient D.F.

Plaintiff has thirty days to file an amended complaint to address the pleading deficiencies addressed herein.[9]  If, however, Plaintiff decides to forego its ERISA claims (Counts One, Six, Seven, and Eight) and proceed solely on Counts Two through Five, it shall likewise notify the Court in writing within thirty days.  If Plaintiff elects to forego its ERISA claims, the Court will not have subject matter jurisdiction.  The Court will, as a result, order that this matter be remanded to the Superior Court of New Jersey.  An appropriate order accompanies this opinion.

Dated: February 27, 2017

John Michael Vazquez, U.S.D.J.

---

[8] Plaintiff requested that Counts One through Seven be dismissed with prejudice as to B.G. and Count Eight severed from the other Patients.  The Court will give Plaintiff the benefit of this opinion prior to dismissing Counts One through Seven with prejudice.  If Plaintiff still wishes to dismiss those Counts, it may do so.

[9] If Plaintiff decides to re-plead its ERISA claims, and properly states a cause of action, the Court may exercise its supplemental jurisdiction over the remaining state law claims.  *See Pryzbowski,* 245 F.3d at 275-76 (finding that when ERISA preempted certain state law claims, the district court properly exercised supplemental jurisdiction over the remaining state law claims because they "[were] derived from the same factual predicate" and therefore should "be combined in one judicial proceeding").